IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLINTON A. ZENTNER, | ) CASE NO. 5:24-CV-02072-JDG |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| vs. | ) JONATHAN D. GREENBERG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) **MEMORANDUM OF OPINION AND ORDER** |
| | ) |
| Defendant. | ) |

Plaintiff, Clinton A. Zentner ("Plaintiff" or "Zentner"), filed a Complaint against the Commissioner of Social Security ("Commissioner"), Frank Bisignano,[1] seeking judicial review of the Commissioner's finding that he was overpaid disability insurance benefits and was not entitled to a waiver of recovery. (Doc. No. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Zentner was found disabled with an onset date of August 3, 2012. (Transcript ("Tr.") 433.) Zentner began receiving Disability Insurance Benefits ("DIB") in March 2013. (*Id*. at 52.) Zentner returned to work in 2017. (*Id*. at 81-82.) He continued to receive DIB payments. (*Id*. at 48.)

In August 2020, SSA informed Zentner that he had been overpaid benefits in the amount of $50,452. (*Id*. at 93.) On July 26, 2021, Zentner filed a request for reconsideration, which was construed as a request for waiver of overpayment recovery.[2] (*Id*. at 120-21.) On September 20, 2021, Zentner completed a Request

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.
[2] Zentner missed the 60-day deadline for requesting reconsideration of the determination that an overpayment exists. *See* 20 C.F.R. § 404.522(a)

1

for Waiver of Overpayment Recovery. (*Id*. at 338-51.) On November 16, 2022, Zentner's request for waiver of overpayment was denied. (*Id*. at 145.)

On December 9, 2022, Zentner filed a request for hearing by an ALJ. (*Id*. at 155.) On February 7, 2024, an ALJ held a hearing, during which Zentner, represented by counsel, testified. (*Id*. at 23-39.) On March 6, 2024, the ALJ issued a written decision finding Zentner was at fault in causing the overpayment, and recovery of the overpayment is not waived. (*Id*. at 12-16.) The ALJ's decision became final on October 4, 2024, when the Appeals Council declined further review. (*Id*. at 1-6.)

On March 10, 2025, Zentner filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 11, 12.) Zentner asserts the following assignment of error:

> 1) The ALJ Erred By Finding That Plaintiff Was At Fault In Causing The Overpayment And That It Should Not Have Been Waived.

(Doc. No. 8 at 6.)

## II. EVIDENCE

**A.      Financial Records and Agency Correspondence**

On November 24, 2012, SSA provided Zentner information concerning his disability benefits, including a pamphlet that explained what to do if he started working, and referred him to the website to learn more about how work and earning effect disability benefits. (Tr. 52-55.)

On March 14, 2018, SSA sent Zentner a notice that it reviewed his work record. (*Id*. at 80.) The letter stated his earnings were reviewed from August 2012 through March 2018, that his payments will continue, that the SSA had not decided if he can still get disability payments, that he can provide more information to SSA, and that he completed his nine-month trial work period. (*Id*. at 80-83.) The letter explained that he has an extended period of eligibility following the trial work period, where he may still receive payments depending on how much he works and earns. (*Id*. at 82.) The letter stated that he will still receive benefits

2

if his condition is still disabling and his work is not substantial gainful activity. (*Id*.) The letter defined substantial gainful activity. (*Id*.) The letter stated his extended period of eligibility began December 2017 and will end after November 2020. (*Id*. at 83.) His first month of substantial gainful activity was December 2017, and he was paid DIB for December 2017, January 2018, and February 2018. (*Id*.) The letter stated he will continue to be paid because his work was no longer substantial gainful activity. (*Id*.) The Monthly Work and Earnings record included with the letter showed Zentner did not earn any income in March 2018. (*Id*. at 89.)

In July 2019, SSA received pay distribution information from Zentner's employer, Tap Worldwide, LLC, indicating Zentner stopped working there early March 2018. (*Id*. 312-14.)

In August 2019, SSA received a Work Activity Questionnaire from Fairway Ford, indicating Zentner began working there March 1, 2018. (*Id*. at 316.) Fairway Ford provided payroll information. (*Id*. at 321-33.)

On October 6, 2019, Zentner received a letter from SSA stating that his "disability has ended" and that he was not entitled to payments for March 2018 on. (*Id*. at 90.) The letter explained substantial gainful activity and provided information on what to do if Zentner disagreed with the decision. (*Id*. at 91-92.)

SSA continued paying Zentner benefits through July 2020. (*Id*. at 48.)

On August 26, 2020, SSA sent Zentner a letter explaining that it overpaid him $50,452 in benefits due to his performance of gainful employment beginning March 2018, and explained what he should do if he thinks SSA is wrong about the overpayment. (*Id*. at 93.)

On November 9, 2020, SSA confirmed receipt of Zentner's request for an explanation. (*Id*. at 97.)

On November 28, 2020, SSA sent Zentner a letter stating his disability payments stopped because of his work. (*Id*. at 99.) The letter explained what he should do if he disagreed with the decision. (*Id*. at 100.)

On January 25, 2021, SSA provided Zentner with a form necessary for him to complete to process his request for waiver. (*Id*. at 103.)

On August 25, 2021, SSA confirmed receipt of Zentner's letter and form SSA-561. The letter stated SSA was treating his request for reconsideration as a request for waiver because he missed the 60-day deadline to file an appeal. (*Id*. at 124.) SSA also enclosed a form for Zentner to complete because he had informally requested a waiver but had not sent any documentation. (*Id*.)

On September 20, 2021, Zentner completed his Request for Waiver of Overpayment. (*Id*. at 338-51.) His income and expenses comparison indicated an excess of $354 per month. (*Id*. at 347.)

On November 2, 2022, SSA sent Zentner a letter stating it could not approve his request that SSA waive the collection of his overpayment. (*Id*. at 143.) The letter informed Zentner that he had the right to a personal conference and scheduled the same for November 10, 2022. (*Id*.)

On November 10, 2022, Zentner attended a personal conference. (*Id*. at 372.) At the personal conference he stated he received letters from SSA regarding his trial work period and amounts he could earn, as well as extended period of entitlement amounts allowable without affecting his benefits, but he thought he was still entitled to the payments because the benefits had not stopped. (*Id*. at 372.)

On November 16, 2022, SSA sent Zentner a letter stating it could not waive the collection of his overpayment. (*Id*. at 145.) Further procedural history is detailed above.

On February 2, 2024, Zentner completed a second Request for Waiver of Overpayment Recovery. (*Id*. at 397-409.) His income and expenses comparison indicated a deficit of $502 per month. (*Id*. at 406.) Zentner purchased a new vehicle since his 2021 Request for Waiver of Overpayment. (*Id*. at 403, 406.)

**B.** **Hearing Testimony**

During the February 7, 2024 hearing, Zentner testified to the following:

- He spoke to folks at the Youngstown SSA office about his work and his receipt of benefits. (Tr. 28.) The folks at the Youngstown SSA office confirmed that

receiving $40-45,000 in earnings each year and continuing to collect disability benefits was proper. (*Id*. at 29.) He acknowledged during a personal conference that he received information of the rules for working during receipt of benefits and that his benefits would end if he continued to work. (*Id*.) Zentner claimed he spoke to someone at the Youngstown office that stated he had a trial work period, and forms were provided to his employer. (*Id*.) Zentner stated he was providing paystubs. (*Id*.)

- Zentner was off work following his injury. (*Id*. at 30.) In 2017 he started working again. (*Id*.) He worked for about a year and then started working for a different company. (*Id*.) When he changed jobs, he updated the staff at the Youngstown field office and provided his wages. (*Id*. at 31.) He has changed jobs several times since 2017. (*Id*. 31-32.) He first spoke to the folks at the field office about his return to work in 2017. (*Id*. at 33.) He brought in "paystubs and everything." (*Id*.)

- Zentner submitted documentation of his monthly income minus expenses with his request for waiver of overpayment. (*Id*. at 32.) He is making less money now than at the time he completed the form. (*Id*.) He faxed an updated form with his current income and expenses. (*Id*. at 33.)

- He stated his job at Fairway Ford from 2018-2020 was accommodated. (*Id*. at 35.) He had fewer, easier duties, and a special counter was brought in for his computer. (*Id*. at 35-37.)

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was overpaid benefits in the amount of $50,452.00 during the period March 1, 2018 to July 1, 2020 (20 CFR 404.504).

2. The claimant was at fault in causing the overpayment (20 CFR 404.506(a), 404.507, and 404.510a).

3. Recovery of the overpayment is not waived, and the claimant is liable for repayment of $50,452.00 during the period March 1, 2018 to July 1, 2020 (20 CFR 404.506).

(Tr. 13-16.)

### V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported

5

by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the

6

Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In his sole assignment of error, Zentner argues he is without fault in causing overpayment because he "repeatedly informed SSA about his employment status from 2017 to 2020 through in-person visits and phone calls" to SSA offices. (Doc. No. 8 at 7.) Zentner asserts he was never informed by SSA representatives "that what he was doing was inappropriate or incorrect." (*Id*.) Zentner argues his communications demonstrate the SSA had full knowledge of his work activity but "failed to act accordingly." (*Id.*) Zentner claims the overpayment is "from SSA's own administrative errors" and not caused by "any misrepresentation or concealment" by Zentner. (*Id*.)

Zentner states the "ALJ's failure to make an explicit credibility determination regarding Plaintiff's testimony further undermines the denial of his waiver requested." (*Id*. at 8.) Zentner cites cases from other Circuits for the premise that the ALJ should have made an express credibility determination regarding Zentner's testimony, and that this error means Zentner should have been found to meet the "without fault" requirement. (*Id*.)

7

Zentner argues overpayment would be against equity and good conscience because he provided wage information to SSA, received "confusing letters", and SSA representatives told him his actions were appropriate. (*Id*. at 9.) Zentner claims he provided "substantial financial documentation showing he has limited monthly income excess of $354", has out-of-pocket medical expenses, and uses credit cards to cover basic needs like food, water, and shelter. (*Id*., citing Tr. 352-69.) Zentner states requiring repayment would penalize him for the SSA's own errors, making recovery inequitable. (*Id*.)

The Commissioner responds substantial evidence supports that Zentner was not without fault in causing the overpayment. (Doc. No. 11 at 7.) The Commissioner points to the communications from SSA in 2013 and March 2018 as evidence the ALJ reasonably concluded Zentner "knew or could have been expected to know" that the DIB payments received after March 2018 were incorrect, establishing fault. (*Id*. at 8.) The Commissioner argues the ALJ correctly noted that there was no corroborating evidence to support Zentner's assertion that he accurately reported his work activity to SSA in March 2018 or later. (*Id*. at 9.) The Commissioner contends the ALJ was not required to make an "explicit credibility determination" because his "factual findings as a whole" show he implicitly resolved conflicting testimony. (*Id*. at 11, citing *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999); *Brant v. Comm'r of Soc. Sec.,* 33 F. App'x 795, 798 (6th Cir. 2002).)

The Commissioner argues substantial evidence supports the ALJ decision that recovery of the overpayment would not defeat the purpose of Title II of the Social Security Act or be against equity and good conscience. (Doc. No. 11 at 12.) The Commissioner states the information submitted by Zentner in 2021 showed his net income exceeded his expenses, and that the ALJ reasonably considered evidence from Zentner's earning records, showing increased income in recent years. (*Id*. at 12-13.) The Commissioner argues the ALJ properly found that recovery of the overpayment would not be against equity and good

8

conscience because the ALJ reasonably discounted Zentner's uncorroborated testimony that he was told he could continue receiving DIB despite engaging in substantial gainful activity. (*Id*. at 14.)

In his Reply Brief, Zentner claims the ALJ's finding that Zentner was not without fault "lacks substantial evidence and misapplies the legal standard." (Doc. No. 12 at 1.) Zentner argues he relied on erroneous information from SSA staff when he was verbally told he could continue his work without losing benefits. (*Id*. at 3.) He states his reliance on information from SSA representatives excuses fault per 20 C.F.R. § 404.510. (*Id*. at 2.) Zentner argues the ALJ erred by not making a "clear" credibility determination regarding Zentner's testimony. (*Id*. at 3.) Zentner states the ALJ relied on outdated financial forms because Zentner submitted a revised financial form in 2024, showing he has a monthly deficit. (*Id*. at 4.) Zentner argues his purchase of a new vehicle is essential for commuting. (*Id*. at 5.)

Zentner contends the ALJ "misapplied the legal standard for determining whether recovery is against equity and good conscience". (*Id*. at 6.) Zentner claims the ALJ required "corroborated proof" that he relied on oral assertions of SSA staff that he "was good" to continue working and receive DIB, which is not required by the regulations. (*Id*.) Zentner argues the ALJ failed to acknowledge the financial harm that recovery of the overpayment would cause. (*Id*.)

Under the Social Security Act, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person . . . proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security[.]" *Cohan v. Comm'r of Soc. Sec.*, No. 2:18-CV-24, 2018 WL 3950194, at *5 (S.D. Ohio Aug. 17, 2018), citing 42 U.S.C. § 404(a)(1). There is, however, an exception to this rule where an individual "'is without fault' and 'such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience.'" *Id*., citing *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) (quoting 42 U.S. C. § 404(b)). Put another way, in order to obtain a waiver of repayment, a claimant must

9

establish that she is both: (1) without fault and (2) that recovery would defeat the purpose of the Title II or would be against equity and good conscience. *Quaynor v. Comm'r of Soc. Sec.*, No. CV 14-12258, 2015 WL 9487846, at *3 (E.D. Mich. Dec. 9, 2015), *adopted by*, No. 14-CV-12258, 2015 WL 9478026 (E.D. Mich. Dec. 29, 2015) (citing *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005)). "The threshold issue is 'fault,' and [the Court's] review is limited to determining whether the [Commissioner's] decision on the 'fault' issue is supported by substantial evidence. The burden is upon the claimant to establish the negative prerequisite ('without fault'), before the [Commissioner] considers the second tier of the wavier statute.'" *Chavez v. Comm'r of Soc. Sec.,* No. 1:14-CV-532, 2015 WL 1730371, at *2 (S.D. Ohio Apr. 14, 2015), citing *Watson v. Sullivan,* 940 F.2d 168, 171 (6th Cir.1991).

> With respect to determining "fault," the Social Security Regulations provide:
>
> Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault . . . on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

> 20 C.F.R. § 404.507. It is not required to show that the claimant acted in bad faith; "rather, an honest mistake may be sufficient to constitute fault." *Center v. Schweiker,* 704 F.2d 678, 680 (2d Cir.1983) (citing *Morgan v. Finch,* 423 F.2d 551, 553 (6th Cir.1970)).

*Chavez,* 2015 WL 1730371, at *2.

The Court finds that the ALJ's determination that Zentner was not without fault in receiving the overpaid benefits is supported by substantial evidence. In his fault analysis, the ALJ wrote:

> The claimant does not dispute that he was overpaid his benefits, but he alleges that he is not at fault because he talked to the Social Security field offices several times and informed them of his work activity, and they told him that nothing was wrong with his work activity. According to the claimant, the Social Security Administration field offices told him that he was permitted to complete a trial work period, and he sent them paperwork and pay stubs from his former employer to verify his work activity (hearing testimony). The claimant alleged in his brief that he visited and contacted the Youngstown and Ravenna field offices from 2017 to 2020.
>
> Despite the allegations of the claimant, the record demonstrates that the claimant was consistently informed by the Social Security Administration that his trial period ended, and he was performing substantial gainful activity. For example, on March 18, 2018, the Social Security Administration determined that the claimant's Social Security benefits would continue, but they also informed him that his trial work period ended in November of 2017, and that he may get an extended period of disability lasting three years, but he would receive disability benefits only if his work was below substantial gainful activity (Exhibit 3B). Despite these warnings, the claimant continued to work at substantial gainful activity levels afterwards. As noted above, the Social Security Administration also informed the claimant on October 6, 2019 that his benefits ended as of December of 2017, and he was informed on August 26, 2020 that his overpayment amount totaled $50,452. At no point during these warnings and notices did the claimant stop working or reduce his amount of work. Instead, he had earnings from 2017 ranging from over $37,000 to $62,000 well over substantial gainful activity levels. While the claimant alleges that the field offices told him his work activity was allowed, there is [no] verification of these allegations, and the above-described letters and notices the claimant received from the Social Security Administration were clear that his continued work activity would result in cessation of his benefits.

(Tr. 14.)

11

Here, SSA notified Zentner of work-related eligibility rules, including trial work period, extended period of eligibility, the definition of substantial gainful activity, and specifying substantial gainful activity amounts. (Tr. 53, 81-89.) The March 2018 letter specifically informed Zentner that he would not be eligible for benefits if his earnings for the month exceeded $1,180. (*Id*. at 83, 89.) Zentner's earnings in 2018, 2019, and 2020 greatly exceeded this amount. (*Id*. at 47, 383.) While Zentner testified that he spoke to representatives at local field offices (*Id*. at 29, 31), there is no evidence to support this testimony.  Given Zentner's failure to submit evidence showing that he was "without fault" for accepting payment that he "knew or could have been expected to know was incorrect" (20 C.F.R. § 404.507(c)), the ALJ's determination that Zentner was at fault and therefor liable for the overpayments is supported by substantial evidence. *See Chavez,* 2015 WL 1730371, at *4, citing *Craft v. Astrue,* No. 07–10824, 2008 WL 2622961, at *2 (E.D.Mich. July 2, 2008) (finding that substantial evidence supported the ALJ's finding that the plaintiff was not "without fault" in accepting disability benefits overpayments and therefore not entitled to a waiver where there was no evidence supporting the plaintiff's testimony that she notified the Administration of a change in her work status); *Hooey v. Astrue,* No. 1l–cv–2805, 2012 WL 5830402, at *5 (D.Minn. Oct.12, 2012) (Report and Recommendation), *adopted,* 2012 WL 5833271 (D.Minn. Nov.16, 2012) (the plaintiff's testimony alone was insufficient to establish that he was "without fault" in accepting overpayments of disability benefits); *Nnakwe v. Astrue,* No. 1l–cv–2415, 2012 WL 3061505, at *3 (E.D.N.Y. July 26, 2012) (holding that pro se plaintiff was not entitled to waiver of liability for disability benefits overpayment where her testimony that she timely notified the Administration that she had returned to work was not supported by additional evidence).

Substantial evidence supports the ALJ's determination that recovery of the overpayment would not defeat the purpose of Title II. "Defeating the purpose of Title II means 'depriving a person of income required for ordinary and necessary living expenses.'" *Valley*, 427 F.3d at 391 (quoting 20 C.F.R. §

404.508(a)). "'[R]ecovery will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income . . . to meet current ordinary and necessary living expenses.'" *Id.* (quoting 20 C.F.R. § 404.508(b)) (emphasis added). "In making this determination, the SSA may look to the individual's financial resources in addition to her or his income." *Id.* (citing § 404.508(a)).

Regarding whether recovery of the overpayment would defeat the purpose of Title II, the ALJ analyzed the evidence as follows:

> Recovery of an overpayment will defeat the purpose of Title II of the Social Security Act if recovery would deprive the without fault debtor of income required for ordinary and necessary living expenses. First, the claimant is at fault for the reasons listed above. Regarding ordinary and necessary living expenses, the claimant alleged in his brief that he is significantly relying on credit cards to get by for basic needs such as food, shelter, and water, and he pointed to various out-of-pocket expenses such as a urinary catheter, chiropractic treatment, and medications (Exhibit 9E). However, the claimant stated in his request for wavier of overpayment that his monthly income is $3,342 and his monthly expenses are $2,963, with an adjusted total excess income of $354 (Exhibit 6D) (the claimant's updated request for a waiver from February 5, 2024 suggests a spending deficit of over $500 per month at Exhibit 18D). Moreover, the claimant's income has increased substantially over recent years, and he earned $62,043 in 2022, his highest earnings since 2017 (Exhibit 16D). Nevertheless, the Social Security Administration should work on a payment plan with the claimant allowing him to repay his overpayment over time in a way that factors in his monthly income and expenses.
>
> The claimant also alleged in his brief that his work activity since 2017 is accommodated by his employer and he was therefore never overpaid. The claimant's employer described him as 90 percent productive as other employees and later as 60 percent productive, but the employer also contradictorily noted that the claimant completed usual work duties without assistance, regularly reported for work as scheduled, and completed the same amount of work as other employees on average (Exhibit 3D; 5D). Moreover, the claimant's earnings since the alleged onset date were significantly higher than substantial gainful activity cutoffs and cannot not be considered an accommodation. Therefore, recovery of the overpayment will not defeat the purpose of Title II of the Social Security Act.

(Tr. 15.) The ALJ considered Zentner's request for waiver of overpayment, which stated he had excess monthly income of $354, as well as the updated request for waiver submitted in February 2024 that disclosed a spending deficit around $500. The ALJ also considered Zentner's income has increased substantially since 2017, well over substantial gainful activity levels. The ALJ recommended a payment plan to allow Zentner to repay the overpayment in a way that is conducive to his monthly income and expenses. Zentner claims the ALJ relied only on his first request for waiver of overpayment, yet the ALJ's opinion expressly noted his revised request for waiver and looked at Zentner's financial position as a whole. While Zentner interprets the records differently, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-73 (6th Cir. 2001). In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Substantial evidence supports the ALJ's conclusion that recovery of the overpayment would not be against equity and good conscience. "Recovery of an overpayment is against equity and good conscience if an (1) individual changed her position for the worse, (2) relinquished a valuable right because of reliance upon the benefits, or (3) an individual did not receive the overpayment because she lived in a different household from the overpaid person." *Cohan,* 2018 WL 3950194, at *7, citing *Unice v. Berryhill*, No. 3:16-CV-02469, 2017 WL 2972172, at *6 (M.D. Tenn. July 12, 2017), *adopted by*, No. 3:16-02469, 2017 WL 4023030 (M.D. Tenn. Sept. 12, 2017) (citing 20 C.F.R. § 404.509(a)). "A claimant may also demonstrate that recovery of an overpayment is against equity and good conscience where the individual 'accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or

14

regulations pertaining thereto . . .'" *Valley*, 427 F.3d at 393–93 (quoting 20 C.F.R. §§ 404.510a; 404.512). Further, an individual's financial circumstances "are not material to a finding of against equity and good conscience." *Id.* (quoting 20 C.F.R. § 404.509(b)).

The ALJ analyzed whether recovery of the overpayment would be against equity and good conscience as follows:

> Recovery is against equity and good conscience when a without fault debtor relies on benefit payments or on notice that such payments are to be made and gives up a valuable right or changes his/her position for the worse. In this case, the claimant is at fault for the reasons listed above, and he did not give up a valuable right or change his position for the worse because he earned well above substantial gainful income from 2017 through the present with his earnings increasing in recent years. Therefore, recovery of the overpayment is not against equity and good conscience.

(Tr. 15.) The ALJ properly found Zentner did not give up a valuable right or change his position for the worse given that he earned well above substantial gainful activity levels, and continued working despite communications from SSA regarding his trial work period and substantial gainful activity. Moreover, as discussed *supra*, the ALJ reasonably discounted Zentner's uncorroborated assertion that SSA representatives advised him that he would continue receiving benefits despite his earned income. *See Chavez,* 2015 WL 1730371, at *4. Thus, Zentner has not met his burden of proving he relied on erroneous information from an official SSA source.

While the Court is sympathetic to Zentner's situation, the repayment is not punitive in nature. "A mistake occurred, of which [Zentner] was the beneficiary. Now he has to make the public fisc whole. We do not conclude that [Zentner] set out to cheat the system, only that he had reason to know he was getting a windfall." *Watson v. Sullivan*, 940 F.2d 168, 172 (6th Cir. 1991).

The ALJ's decision is supported by substantial evidence.  There is no error.

15

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision be AFFIRMED.

**IT IS SO ORDERED.**

Date:  November 18, 2025        *s/ Jonathan Greenberg*
                                Jonathan D. Greenberg
                                United States Magistrate Judge